OF THE

## STATE OF IOWA

AT

## DES MOINES, JANUARY AND MAY TERMS, 1916

AND IN THE SEVENTIETH YEAR OF THE STATE.

---

R. H. McDowell, Appellee, v. R. P. Scott et al., Appellants.

**CONTRACTS:** Consideration—Failure of Consideration—Vendor Without Title. No recovery may be had on a contract of sale of property which the vendor did not own and which he had no authority to sell. So held as to a note and mortgage given for a patent right.

*Appeal from Marshall District Court.*—B. F. Cummings, Judge.

Monday, April 10, 1916.

Action in equity to foreclose a chattel mortgage and enforce collection of a promissory note. Decree as prayed, and defendants appeal.—*Reversed.*

*C. H. E. Boardman, R. P. Scott* and *J. W. Lorenz,* for appellants.

*F. E. Northup,* and *Bradford & Johnson,* for appellee.

Weaver, J.—The defendants admit the making of the note and mortgage, but deny that they are in any way indebted thereon. They allege that the execution of said instrument was procured by false representations, and set up certain facts tending to show that the note was given without consideration, or that the consideration, if any, has wholly failed. They allege that plaintiff was a practical iron moulder, and that defendants were without knowledge or experience in that business; that plaintiff represented to them that he had a basic patent upon a device known as a bulb sponge for the use of moulders in the prosecution of their work; that it was a novel invention by him and was a convenient and useful, if not necessary, device for the purposes mentioned; and that his patent was original, and sufficiently broad to insure to the holder a monopoly for the construction and sale of bulb sponges. They further allege that said representations were made for the purpose of inducing defendants to purchase said patent; that they believed them to be true, and, so believing and relying thereon, they gave the note and mortgage. They aver, however, that said representations were false and known by plaintiff to be false at the time that they were made; that plaintiff was not the owner of any patent of the kind described, nor was he the inventor of any new and practical device of the kind described by him, nor has he ever produced, offered or assigned any patent to defendants or either of them; and that the note given by them is, therefore, without consideration, and does not evidence any debt owed by them. They still further allege that plaintiff did not exhibit or show to them his alleged patent, representing to them that he did not have it in his immediate possession, but he would procure it for them speedily, for the fulfillment of

*Margin note:* Contracts: consideration: failure of consideration: vendor without title.

which promise they could rely upon his statements, and that they did in fact rely thereon in giving the note and mortgage. The same affirmative matters are also pleaded by defendants as a counterclaim upon which they demand a recovery of damages.    In reply, plaintiff denies having made any false representations to the defendants or that he in any manner deceived or misled them into the making of the note and mortgage.

At the close of the testimony in the case, defendants further amended their answer, alleging that, at the time that plaintiff induced them to enter into the deal and give him their note and mortgage for the alleged patent, he had already sold and assigned the only patent he had acquired to the Bulb Sponge Company, a corporation at Salem, Ohio, and he himself had no right or title therein which he could sell or transfer to any one.

The defense, as will be seen, rests upon two propositions: (1) The alleged false representations made by plaintiff in procuring the note; and (2) the alleged fact that plaintiff did not own and was without authority to sell or transfer the patent to defendants.   If the last-mentioned defense is good, it will be unnecessary to consider the other issue, and we therefore give it first attention.

On the trial, it was shown that the agreement for the sale of the patent had been reduced to writing, and therein plaintiff described himself as the owner of such patent and agreed to sell and transfer it to defendants for a stated consideration. There was also produced a patent issued to the plaintiff in the year 1906 upon certain improvements in fountain brushes especially designed for foundry use.   Concerning the ownership of this patent at the time of the transaction with defendants, the plaintiff testified as a witness.   He testified in general terms that, in negotiating with defendants, he had possession of the patent and exhibited it to them, and that he owned it and had the right to sell and transfer it.   Upon the question whether he then had and exhibited the patent, the

apparent preponderance of the evidence is against him, and tends to sustain the defendant's theory that it was not exhibited. His further examination reveals some peculiar inconsistencies. He says:

"Some other people down in Ohio owned an interest in this patent, incorporated as a stock company, and they bought several shares of stock. The name was the Bulb Sponge Company of Salem, Ohio. Aside from the patent this corporation owned only a few dies which Mr. Scott owns at the present time, necessary to manufacture. This corporation down in Ohio owned the patent and a few tools and that is all they did own. I owned 75 per cent of the shares of stock in the Bulb Sponge Company of Salem, Ohio. I don't know whether the Bulb Sponge Company of Salem, Ohio, owned the patent or not. Morally they did not; legally I don't believe they ever did. I had a power of attorney from that corporation to deal with somebody with reference to the patent. Surely what I had to do with this patent had to be done under the power of attorney; as McDowell, I never owned the patent when you come right down to it. In the meantime, before the contract was made with Scott, I had the matter straightened up so that it was absolutely in my hands to sell; that is, it was in my hands to sell under power of attorney. Whether it was to sell for the Bulb Sponge Company—I don't know whether I could decide that question."

When asked to produce his power of attorney, he produced a power from two individuals to sell their stock in the corporation referred to, and said this was the paper from which his authority was derived. Again, he seems to say that this corporation never owned any interest in the patent, but had only the "right to manufacture and sell." Still again, he says, in substance, that his deal with defendants was not for a mere assignment of the patent, but was for a sale of the shares of stock in the Ohio corporation. Speaking of himself and the two persons whose power of attorney he held, he says:

"We got together and decided verbally that that is what

we should do. They gave me power of attorney to sell their interest and I understood that that transferred the Bulb Sponge Company of Salem, Ohio, to Mr. Scott when the transfer had taken place; the patent and everything that went with it. . . . . I understood that at the time I was negotiating with Mr. Scott and contemplated selling him all the stock of the Bulb Sponge Company of Salem, Ohio. My understanding of the matter all the way through was that I sold Scott the stock. If he had lived up to his agreement he would have had all the stock. I intended to give him in this contract the stock of the Bulb Sponge Company of Salem, Ohio, patent rights and all that went with it. The Bulb Sponge Company of Salem, Ohio, owned the right to make and sell. I would have sold him that along with the patent rights and dies and tools we had on hand and everything else we had turned over to him. I went to work and got an option on this stock of these men, Hart and French, so I could transfer it to Scott.''

The contract between plaintiff and defendant was, as we have seen, reduced to writing. No reference whatever is made therein to the existence of the corporation or to the fact that it owned or had any interest in the patent, nor is there any mention or suggestion of the ownership or transfer of the shares of stock. The sole consideration for the note and mortgage, so far as shown by the contract, was the assignment and transfer of a certain patent of which plaintiff therein described himself as owner. It seems very plain, however, that the real owner of the patent was the Ohio corporation, though, as the alleged patentee and owner of a majority of the capital stock, doubtless he felt himself, in one sense of the word, the real owner. No other reasonable construction can be placed upon his statement:

''This corporation down in Ohio owned the patent and a few tools; that is all they did own. . . . I don't know whether the Bulb Sponge Company owned the patent or not; legally I don't believe they ever did. . . . Surely what I

had to do with this patent had to be done under this power of attorney. As McDowell, I never owned the patent when you come right down to it."

If the corporation ever reassigned the patent to him or relinquished the "sole right to manufacture and sell" which he says he gave it, or authorized him to sell and dispose of the patent, there is not the slightest written or documentary evidence. His authority to sell the corporate shares belonging to other stockholders conferred not even color of right or authority to sell the patent, which was apparently the corporation's sole asset; and, if defendants are compelled to pay this claim, there is nothing in the record to estop the corporation from asserting and maintaining its exclusive right and title thereto. Plaintiff admits that he has never tendered a delivery of the patent, saying that he left that to his attorney. The attorney, testifying on the subject, says that, about the time that the note became due, he told Scott that he "would make arrangements to have the assignment made and wanted the note paid;" and that, after the note was due, he "made a similar demand and Scott declined to pay it," and would not have anything to do with it. The witness adds:

"I did not tender an assignment to Scott. He refused to have anything to do with it or to accept it."

The testimony of the attorney does not get us much nearer to the decisive facts upon which plaintiff's right to recover must rest. He does not exhibit or identify the assignment which he proposed to deliver nor indicate by whom it was to be made. His statement to the defendant that he "would arrange to have one made" indicates that he was not then prepared to deliver it. In the light of plaintiff's own showing, an assignment by him would have been of no value, and, as we have already said, there is an entire absence of competent evidence that the corporation was under any obligation to surrender the patent in order to permit the plaintiff to make good his contract. It is true that he states on the witness stand that, pending the suit, and within a few weeks

before the trial, the corporation had been "dissolved;" but how dissolved, whether by voluntary act or by judicial decree, whether solvent or insolvent, what disposition was made of its assets, including the patent, there is neither proof nor offer of proof. In short, the record is barren of facts showing that, at the date of the contract, plaintiff was able to furnish the promised consideration for the note in suit, or that, at any time since then, he has acquired the right to sell or dispose of the patent. In our judgment, the presumption of consideration which arises from the written promise to pay is fully rebutted by the plaintiff's own showing, and the defense of failure of consideration is well established.

This conclusion requires a reversal of the decree below, and we need take no time for an extended consideration of the other defense, though to a considerable degree it has the support of the larger number of witnesses and an apparent preponderance of the evidence.

As a necessary result of these findings, the decree of the trial court must be reversed, and the plaintiff's bill ordered dismissed.—*Reversed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.